UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DELILLE OXYGEN COMPANY,

           **Plaintiff,**

    v.

TOPSOE A/S, *et al.*,

           **Defendants.**

:

Case No. 2:25-cv-225
Chief Judge Sarah D. Morrison
Magistrate Judge S. Courter M. Shimeall

:

## OPINION AND ORDER

After years-long talks with Danish chemical manufacturer Topsoe A/S,

DeLille Oxygen Company contracted with A/S's U.S. subsidiary (Topsoe eCOs, Inc.)

to lease facilities to efficiently produce carbon monoxide from carbon dioxide. Nearly

six years after the leases were signed, DeLille filed this suit against A/S and eCOs,

asserting that the technology never worked as promised. The matter is before the

Court on the Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(6).[1] (eCOs

Mot., ECF No. 37; A/S Mot., ECF No. 38.) For the reasons below, the Motions are

**GRANTED in part and DENIED in part**.

## I.    BACKGROUND

For purposes of the Motions to Dismiss, all well-pleaded factual allegations in

the Amended Complaint are taken as true. *See Gavitt v. Born*, 835 F.3d 623, 639–40

---

[1] Defendants request oral argument on the motions. Because argument would not aid the decisional process, that request is **DENIED**. *See* S.D. Ohio Civ. R. 7.1(b)(2).

(6th Cir. 2016). The following summary draws from the allegations in the Amended Complaint and the documents integral to it.

DeLille manufactures industrial and specialty gases for its customers. (Am. Compl., ECF No. 36, ¶ 9.) A/S is a Danish company specializing in carbon reduction technology. (*Id.*, ¶ 10.)

DeLille representatives first saw A/S's advertisements at a trade show in 2016. (*Id.*, ¶ 13.) The ads touted technology (known as SOEC or eCOs) that could separate oxygen from carbon dioxide to efficiently produce carbon monoxide (CO). (*Id.*) Believing the technology could be useful to one of its clients (CIL) DeLille reached out for more information. (*Id.*, ¶ 14.) DeLille hoped the technology would allow it to produce CO in Ohio, rather than having to truck it in from out-of-state. (*Id.*)

In response to DeLille's inquiry, on February 29, 2016, A/S's Casper Hadsbjerg responded by email that he believed its technology was "a great match with [DeLille's] current business." (*Id.*, ¶ 17; *see also* ECF No. 36-3, PAGEID # 825.) Mr. Hadsbjerg told DeLille that A/S was "using inhouse developed and produced solid electrolysis stacks (SOEC) to convert CO2 into CO and O2." (*Id.*) He also said the technology could produce CO that was 99.99% pure, and that A/S could deliver a pre-commissioned plant with connections for power, CO2, vent, and product gas. (Am. Compl., ¶ 18; *see also* ECF No. 36-3, PAGEID # 825.) He described the technology as follows:

> [T]he technology is electrolysis based. We are using inhouse developed and produced solid oxide electrolysis stacks (SOEC) to convert CO2 into

> CO and O2. The SOEC cell acts as a membrane separating the CO (and unconverted CO2) from the O2. This is done at elevated temperature inside what we refer to as the eCOs core, which handles all conversions and hot gasses. eCOs is our trade name for this technology. The eCOs plant itself is the cold gas handling and CO/CO2 separation system (PSA) build around the eCOs cores. What sets this system apart from alternative CO generation technologies is the fact that we only need to separate CO from CO2, which is a much simpler process than separating CO from a mixture of other light gasses as done in the traditional CO generation route. This allows us to design a much smaller system and therefore allows the plant itself to be economical in a scale where the unit can be used as direct on-site supply, or as a tube or bottle filling station.

(ECF No. 36-3, PAGEID # 825.)

DeLille informed A/S that CIL was its "ultimate customer" for the CO. (Am. Compl., ¶ 19.) A/S then had direct contact with CIL – among other things, Mr. Hadsbjerg told CIL that its technology was "a great fit" in "terms of capacity, purity and reliability." (*Id.*, ¶ 19; *see also* ECF No. 36-4, PAGEID # 830.) He provided CIL with presentation materials and invited DeLille and CIL to visit a "running reference plant" in Texas. (*Id.*; *see also* ECF No. 36-4, PAGEID # 830; *see also* ECF No. 36-5.) In June 2016, representatives from both DeLille and CIL toured the Texas plant, which Mr. Hadsbjerg assured them was operating reliably. (Am. Compl., ¶ 23.)

In 2019, following additional discussions and based on A/S's assurances regarding the viability and reliability of the eCOs technology, DeLille entered into a contract with CIL (the "CIL Agreement") for DeLille to provide CIL with carbon monoxide using A/S's eCOs technology. (Am. Compl., ¶ 29.) Shortly thereafter, DeLille entered into leases with eCOs (the newly formed U.S. subsidiary of A/S) to

design and manufacture two plants in Ohio, and subsequently lease those plants to DeLille for their use performing under the CIL Agreement (the "Leases"). (*Id.*, ¶ 30.)

DeLille alleges that eCOs failed to meet all of the deadlines in the two Leases. (*Id.*, ¶ 33.)

In March 2021, A/S engineers travelled to Ohio to install the long-delayed eCOs units and investigate the plants. (*Id.*, ¶ 36.) One such engineer, Dennis Rasmussen, referred to the eCOs system as a "prototype" and told DeLille's owner and president that Mr. Hadsbjerg and his sales team were "full of s**t." (*Id.*, ¶ 37.) Until that time, A/S had always represented that its technology was well established; this was the first time DeLille had been told that the eCOs technology was a "prototype" or otherwise suggested that it was experimental. (*Id.*)

After the two plants contemplated by the Leases finally started up, the eCOs cores failed. (*Id.*, ¶ 38.) Mr. Rasmussen disclosed to DeLille—again, for the first time—that the cores had also failed at the Texas "reference" plant. (*Id.*)

Despite the problems building the Ohio plants, Defendants represented to DeLille that the eCOs technology would work if given enough time and resources. (*Id.*, ¶ 40.) Based on those assurances, DeLille continued their efforts to get the plants up and running. (*Id.*, ¶ 41.) But after more than three years without getting the technology to work, Defendants abandoned the project in 2024. (*Id.*, ¶ 40) DeLille alleges that Defendants ultimately admitted that their technology cannot produce CO at the quantity or purity level required by the Leases. (*Id.*, ¶ 45.)

On February 3, 2025, DeLille initiated arbitration against the Defendants, which was later consolidated into this case. (*Id.*, ¶ 46.) DeLille now asserts the following claims against A/S and eCOs:

- Count I: Fraudulent Inducement
- Count II: Negligent Misrepresentation
- Count III: Breach of Contract
- Count IV: Breach of the Duty of Good Faith and Faith Dealing
- Count V: Breach of Warranty
- Count VI: Promissory Estoppel
- Count VII: Declaratory Judgment

A/S and eCOs move to dismiss all or most of the claims against them. (A/S Mot., eCOs Mot.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

### III.    Topsoe A/S's Motion to Dismiss

A/S moves to dismiss all claims asserted against it. (A/S Mot.) As a threshold matter, the Court must determine the law applicable to DeLille's claims against A/S. In a diversity action, a federal court applies the substantive law of the forum state—in this instance, Ohio. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). That principle extends to the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941). A/S argues that "Texas or Ohio law applies to DeLille's claims" against it. (A/S Mot., PAGEID # 1245.) DeLille "does not dispute that Ohio law applies[.]" (ECF No. 44, PAGEID # 1341.)

Under Ohio's choice-of-law rules, "an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken." *Hayslip v. Genuine Parts Co.*, 420 F. Supp. 3d 666, 677 (S.D. Ohio 2019) (Smith, J.) (quoting *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 115 (Ohio 2006)). Because the parties have not identified any conflict, the Court will apply Ohio law.

6

## A. Contract Claims

A/S first moves to dismiss DeLille's contract claims on the grounds that A/S was not a party to the Leases. [2] In response, DeLille urges the Court to pierce the corporate veil between the two companies and hold A/S liable for eCOs's breach.

Under Ohio[3] law, a parent corporation generally is "not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation." *Starner v. Guardian Indus.*, 758 N.E.2d 270, 275 (Ohio Ct. App. 2001). But, in "extreme" cases, "[s]hareholders may . . . be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation 'for criminal or fraudulent purposes' to the detriment of a third party." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 540, 545 (Ohio 2008) (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075 (Ohio 1993)). Disregarding the corporate form in this way is known as "piercing the corporate veil." Ohio courts will pierce the corporate veil only when

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit [fraud, an illegal act, or a similarly unlawful act] against the person seeking to disregard the corporate

---

[2] DeLille concedes that the Amended Complaint fails to state a claim against A/S for Count IV (Breach of the Implied Duty of Good Faith and Fair Dealing). (ECF No. 44, PAGEID # 1344.) As such, that claim is **DISMISSED**.

[3] DeLille asserts that Texas law should govern the corporate-veil question because eCOs is a Texas corporation. Although it cites a federal case for the proposition that the law of the state of incorporation should apply, Ohio courts do not seem to follow that rule. *Cf. Duke Energy Fla., LLC v. FirstEnergy Corp.*, 731 F. App'x 385, 391 (6th Cir. 2018) (concluding that, under Ohio's choice-of-law rules, the law governing "the propriety of piercing the corporate veil" is the law of the state with the "most significant relationship to the lawsuit").

entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere*, at 1077 (syllabus) (as modified by *Dombroski*, at 545). A/S argues that DeLille fails to allege sufficient facts to hold it liable for eCOs's alleged breach of contract. The Court agrees.

The first prong of the *Belvedere* test asks whether the corporation is an 'alter ego' of the shareholder. *State ex rel. Cordray v. U.S. Tech. Corp.*, No. 11AP060025, 2012 WL 691582, at *4 (Ohio Ct. App. Feb. 29, 2012) ("The first element is a concise statement of the alter ego doctrine; to succeed a plaintiff must show that the individual and the corporation are fundamentally indistinguishable.") Courts consider a variety of factors to determine whether this prong is met, including:

> (a) grossly inadequate capitalization; (b) failure to observe corporate formalities; (c) insolvency of the debtor corporation at the time the debt was incurred; (d) the parent holding itself out as personally liable for certain subsidiary obligations; (e) diversion of funds or other property of the subsidiary for the parent's use; (f) the absence of corporate records; and (g) the fact that the subsidiary was a mere facade for the operations of the parent.

*Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007).

Here, the Amended Complaint says nothing about eCOs's capitalization, corporate records, or financial relationship with A/S. As to the control A/S asserts over eCOs, DeLille alleges only that A/S is the parent company and sole owner of eCOs and that the two companies share employees. (*See* Am. Compl., ¶¶ 4, 30.) Even accepting the allegations as true and viewing them in the light most favorable to DeLille, these facts do not create a reasonable inference that A/S's control over eCOs was so complete that eCOs had no separate mind, will, or existence of its own.

Because DeLille fails on the first *Belvedere* prong, the Court need not and does not evaluate the second and third. *See Dombroski*, 895 N.E.2d at 543 (All three prongs of the test must be met for piercing to occur.").

DeLille tries to save its contract claims by arguing that A/S conspired with eCOs to perpetrate a fraud. (ECF No. 44, PAGEID # 1342–43.) But civil conspiracy is not alleged in the Amended Complaint, and the Court will not permit DeLille to amend the pleadings through its Response.

A/S's Motion to Dismiss is **GRANTED** as to Counts III (Breach of Contract) and V (Breach of Warranty).

### B. Promissory Estoppel

DeLille asserts that, if A/S is not subject to its contract claims, "it remains subject to the promissory estoppel claim[.]" (ECF No. 44, PAGEID # 1344.) A/S argues that the claim is time-barred by Ohio's statute of limitations. (A/S Mot., PAGEID # 1264.) DeLille does not respond to this argument, and so concedes the point.

A/S's Motion to Dismiss is **GRANTED** as to Count VI (Promissory Estoppel).

### C. Tort Claims

A/S next argues that DeLille's state-law tort claims—Count I (Fraudulent Inducement) and Count II (Negligent Misrepresentation)—must be dismissed for failure to allege facts sufficient to support the claims and because they are time-barred. The Court will address each claim in turn.

9

### 1.    Fraudulent Inducement

A/S makes several arguments for dismissing DeLille's fraudulent inducement claim against it: first, that DeLille fails to plead facts supporting each of the claim's elements; second, that DeLille fails to plead the claim with particularity; and third, that the claim is time-barred. All three arguments fail.

### a)    Sufficient Facts to State a Claim

First, A/S argues that DeLille fails to allege sufficient facts to state a claim for fraudulent inducement. To state a claim for fraudulent inducement under Ohio law, a plaintiff must allege that it was

> induced to enter into an agreement through fraud or misrepresentation. "The fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution." *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990). In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. *Beer v. Griffith*, 399 N.E.2d 1227, 1231 (Ohio 1980).

*ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998) (cleaned up).

A/S focuses on the reliance element of DeLille's claim.[4] In its view, DeLille could not have relied on A/S's alleged representations and, in fact, admitted that it did not rely on those representation. The Court disagrees. DeLille adequately alleges that it relied on the representations made in its years-long conversation with A/S when it entered into the Leases with A/S's new U.S. subsidiary.

---

[4] A/S also argues that it could not have induced DeLille to contract with a third party (eCOs). (A/S Mot., PAGEID # 1261.) But A/S concedes that it can find no Ohio case law supporting the proposition that fraudulent inducement is limited to contracting parties. (*Id.*)

A/S argues for the opposite conclusion by pointing out that, at points between 2016 and 2019, DeLille was "not totally convinced" that the eCOs technology would operate the way it needed. (A/S Mot., PAGEID # 1260 (citing Am. Compl., ¶ 25).) But the Amended Complaint goes on to allege that A/S worked to convince DeLille of the technology's viability—and that DeLille relied on those efforts when it entered into the Leases.

### b) Pleading with Particularity

Plaintiffs face a heightened pleading standard with respect to claims sounding in fraud. *See* Fed. R. Civ. P. 9(b) (requiring that the circumstances constituting fraud must be pled "with particularity"). To satisfy Rule 9(b)'s heightened standard, a complaint must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (internal quotation and citation omitted). Rule 9(b) "should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503–04 (6th Cir. 2008) (internal quotation and citation omitted). Instead, Rule 9(b) is intended to "provide a defendant with 'at least the minimum degree of detail necessary to begin a competent defense'" and "discourage fishing expeditions . . . which appear more likely to consume a defendant's resources than to reveal evidence of wrongdoing." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 736 (S.D. Ohio 2009) (Graham, J.) (quoting *SNAPP*, 532 F.3d at 504) (cleaned up).

11

12

A/S argues that DeLille fails to plead fraudulent inducement with sufficient particularity. Specifically, A/S asserts that DeLille does not plead "*what* Mr. Hadsbjerg actually said" in the Augus 2017 meeting "or *how* he could have actually known that what he was saying was false." (A/S Mot., PAGEID # 1262.) A/S also asserts that DeLille engages in improper group pleading with respect to the alleged misrepresentations made in 2021 and 2023. (*Id.*)

Read as a whole, the Amended Complaint pleads fraudulent inducement with sufficient particularity:

| Pleading Requirement | Allegation |
| --- | --- |
| Content | A/S said it was "using inhouse developed and produced solid electrolysis stacks (SOEC) to convert CO2 into CO and O2" (Am. Compl., ¶ 17.)<br><br>Purity: A/S represented it could design eCOs units to produce 99.99% pure CO. (*Id.*, ¶¶ 18, 22.)<br><br>Scalability: A/S said that its eCOs plant capabilities were scalable up to 7,500 scf/hour with a footprint of 1 to 3 standard 40' containers. (*Id.*, ¶¶ 20, 28.)<br><br>Reliability: A/S assured DeLille that its Texas facility was operating, and operating reliably. (*Id.*, ¶¶ 23–24.) |
| Time and place | Emails dated February 29, 2016, April 4, 2016, June 17, 2016; presentation and budget delivered April 4, 2016. (Exhibits to Am. Compl.)<br><br>June 8, 2016 facility visit in La Porte, Texas. (Am. Compl., ¶ 23.)<br><br>August 23, 2017 in-person conference. (*Id.*, ¶ 28.) |
| Fraudulent scheme | Overstate present capability of eCOs technology. (*Id.*, ¶ 28.) |
| Fraudulent intent | Induce DeLille to enter into Leases. (*Id.*, ¶ 16.) |

These allegations are sufficiently specific to permit A/S to develop a competent defense, while protecting it against a fishing expedition.

### c) Statute of Limitations

Finally, A/S argues that DeLille's fraudulent inducement claim is time-barred. A motion to dismiss for failure to state a claim "can be an appropriate mechanism for dismissal of time-barred claims . . .[']when the complaint shows conclusively on its face that the action is indeed time-barred.'" *Hawkins v. CooperSurgical, Inc.*, No. 1:19-cv-01047, 2020 WL 1864907, at *2 (S.D. Ohio Apr. 14,

2020) (Barrett, J.) (quoting *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012) (Frost, J.)). An Ohio fraudulent inducement claim is subject to a four-year statute of limitations, which does not accrue "until the fraud is discovered." Ohio Rev. Code § 2305.09.

A/S argues that the statute of limitations ran in 2021, because the alleged misrepresentations were made in 2017 (at the latest). DeLille argues in response that the discovery rule saves its claim. The Amended Complaint alleges that DeLille first discovered the fraudulent nature of those 2017 statements in 2021, when A/S engineer Dennis Rasmussen revealed that the technology A/S had been touting was still in "prototype" and that the sales team was "full of s**t." Taking these allegations as true and drawing all reasonable inferences for DeLille, it is not conclusive on the face of the pleadings that DeLille's fraudulent inducement claim is time-barred.

A/S's Motion to Dismiss is **DENIED** as to Count I (Fraudulent Inducement).

### 2.     Negligent Misrepresentation

Ohio courts have long recognized a cause of action for negligent misrepresentation. *See Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898 (Ohio 1986). The elements are:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

14

*Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989) (quoting Restatement (Second) of Torts § 552 (A.L.I. 1977)).

Negligent misrepresentation claims are subject to a four-year statute of limitations. Ohio Rev. Code § 2305.09(D). "Ohio courts have . . . held that the discovery rule does not extend to claims for negligent misrepresentation" and that the claim thus accrues when the misrepresentation is made. *Neff v. Standard Fed. Bank*, No. 2:06-CV-856, 2007 WL 2874794, at *6 (S.D. Ohio Sept. 27, 2007) (Graham, J.) (collecting cases). Accordingly, any alleged misstatement made before 2021 is time-barred.

That leaves the following four alleged misrepresentations:

| Date | Speaker | Statement |
|------|---------|-----------|
| 6/8/2021 | Dennis Rasmussen *A/S employee* | "I am sure Topsoe will solve these problems" |
| 7/12/2021 | Christian Olsen *A/S and/or eCOs employee* | A/S and/or eCOs has "made huge progress toward a root cause for the failure" of the Plants |
| 2/2/2022 | Niels Kristian Nielsen *A/S employee* | A/S and eCOs "will present and discuss the findings, and find a permanent solution together with you" |
| 1/30/2023 | Niels Kristian Nielsen *A/S and/or eCOs employee* | The plants "can work" as needed by the specifications in the Leases |

(Am. Compl., ¶¶ 40.a.–d.) A/S's only argument why a claim based on these statements should be dismissed is that they post-date the Leases, and therefore could not have induced DeLille to contract with eCOs.[5] (A/S Mot., PAGEID # 1262.)

---

[5] A/S also argues that the references to "A/S and/or [eCOs]" constitute group pleading and thus do not satisfy Rule 9(b). (A/S Mot., PAGEID # 1262.) The

While that is true, DeLille alleges that these statements induced it to continue efforts to "get the Plans up and running pursuant to the terms of the Leases." (Am. Compl., ¶ 78.) A/S provides no basis to find this is insufficient.

A/S's Motion to Dismiss is **GRANTED** as to Count II (Negligent Misrepresentation) to the extent that claim is based on statements made before 2021; it is otherwise **DENIED**.

### D. Declaratory Judgment

Finally, A/S moves to dismiss the declaratory judgment claim against it. DeLille's Count VII (Declaratory Judgment) seeks a declaration "that any liability [DeLille] may have based upon its Agreement with CIL shall be the responsibility of A/S and/or [eCOs]." (Am. Compl., ¶ 119.) A/S summarily argues that this claim should be dismissed because there is no actual case or controversy. (A/S Mot., PAGEID # 1264.) The Court construes this as an attempt to assert that the claim is not ripe—but with no further analysis or explanation, the argument is unavailing. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (quotation and alteration omitted).

A/S's Motion to Dismiss is **DENIED** as to Count VII (Declaratory Judgment).

## IV. Topsoe eCOs's Motion to Dismiss

eCOs moves to dismiss DeLille's claims—save for Count III (Breach of Contract)—under Rule 12(b)(6). (eCOs Mot.) Because the parties agree that,

---

reference to Rule 9(b) leads the Court to conclude that A/S directs this argument at the claim for fraudulent inducement, not negligent misrepresentation.

pursuant to the Lease terms, Pennsylvania law applies to DeLille's claims against eCOs, there is no need for a choice-of-law analysis. *See Tele-Save Merchandising Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) ("Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties.").

### A.    Contract Claims

eCOs first moves to dismiss DeLille's claims for breach of the implied duty of good faith and fair dealing and breach of warranty as duplicative of its breach of contract claim.[6] (eCOs Mot., PAGEID # 1203–04.) DeLille does not respond to this argument (*see* ECF No. 45, *generally*) and thus concedes the redundancy.

eCOs's Motion to Dismiss is **GRANTED** as to Counts IV (Breach of Duty of Good Faith and Fair Dealing) and V (Breach of Warranty).

### B.    Promissory Estoppel

eCOs next argues that DeLille's promissory estoppel claim (a quasi-contractual claim) must be dismissed because the Leases constitute valid and enforceable contracts. Under Pennsylvania law, "the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his

---

[6] eCOs also moves to dismiss DeLille's contracts claims to the extent they seek "relief that exceed[s] or differ[s] from what is permitted under the limitation of liability provisions in the Leases, including requests for consequential punitive, special, and incidental damages." (eCOs Mot., PAGEID # 1205.) The Amended Complaint seeks "punitive damages . . . based on A/S's willful misrepresentation." (Am. Compl., PAGEID # 723.) In view of the Court's conclusion that DeLille has not alleged facts sufficient to pierce the corporate veil, *see supra* § III.A., the Court does not construe the Amended Complaint as asserting a prayer for relief that is disallowed by the Leases. eCOs's Motion to Dismiss is **DENIED as moot** as to the prayer for relief.

position to his own detriment." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000). "Generally, this doctrine is invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (applying Pennsylvania law). In eCOs's view, the fact of the Leases precludes DeLille from asserting a promissory estoppel claim.

DeLille argues in response that promissory estoppel is pleaded in the alternative, as a back-stop in the event that the Leases are considered unenforceable. (ECF No. 45, PAGEID # 1370 (citing Fed. R. Civ. P. 8(d)(2) (permitting alternative statements of a claim).) But this alternative is only available when the existence of a valid contract is in dispute. *See Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 870 (E.D. Mich. 2013) (collecting cases). Here, eCOs admits that "the Leases are valid contracts." (eCOs Reply, ECF No. 49, PAGEID # 1398.) Thus, DeLille's promissory estoppel claim cannot stand. *Iversen Baking Co. v. Weston Foods, Ltd.*, 874 F. Supp. 96, 102 (E.D. Pa. 1995) (applying Pennsylvania law to explain that "breach of contract and promissory estoppel may be pleaded in the alternative, but . . . if the court finds that a contract exists, the promissory estoppel claim must fall").

eCOs's Motion to Dismiss is **GRANTED** as to Count VI (Promissory Estoppel).

### C.     Tort Claims

eCOs next moves to dismiss DeLille's tort claims. The Court will address each claim in turn.

### 1.    Fraudulent Inducement

Under Pennsylvania law, fraudulent inducement requires

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (internal quotation and citation omitted). eCOs argues that the Amended Complaint does not "plead with any specificity that eCOs made any fraudulent statement," so the claim must be dismissed. (eCOs Reply, PAGEID # 1397.) DeLille argues that A/S's statements are attributable to eCOs. (ECF No. 45, PAGEID # 1363 ("It must first be emphasized that Defendants are, as pled, jointly responsible for all statements made.") The Court has already rejected that theory. *See* § III.A., *supra*.

eCOs's Motion to Dismiss is **GRANTED** as to Count I (Fraudulent Inducement).

### 2.    Negligent Misrepresentation

eCOs next argues that DeLille's negligent misrepresentation claim is barred by Pennsylvania's economic loss rule.  The economic loss rule prevents a plaintiff "from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). The result is that "negligent misrepresentation theories do not apply to actions between commercial enterprises where the only damages alleged are economic losses." *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, No. CIVA 06-

3959, 2006 WL 3097771, at *3 (E.D. Pa. Oct. 30, 2006) (collecting cases). DeLille does not assert property damage, personal injury, or any other injury outside of the "disappointed expectations" arising from eCOs's performance under the Leases. *Sun Co. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 371 (E.D. Pa. 1996). The negligent misrepresentation claim thus fails.

eCOs's Motion to Dismiss is **GRANTED** as to Count II (Negligent Misrepresentation).

### D. Declaratory Judgment

eCOs makes the same argument as A/S for dismissing DeLille's declaratory judgment claim. For the reasons A/S's argument failed, so too does eCOs's. *See supra*, § III.D.

eCOs's Motion to Dismiss is **DENIED** as to Count VII (Declaratory Judgment).

## V. DeLille's Request for Leave to Amend

Finally, at the close of its Response briefs, DeLille says that it should be permitted to cure any defects in its pleadings, to the extent the Court finds that the Amended Complaint does not adequately state its claims. (ECF No. 44, PAGEID # 1353; ECF No. 45, PAGEID # 1372.) The Court interprets this statement as a request for an advisory opinion on any deficiencies in the Amended Complaint. *See Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000) (affirming District Court's determination that "Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." (emphasis removed)). Federal Courts do not issue

20

advisory opinions. Because DeLille's request is not a properly argued or supported motion to amend, it is **DENIED**.

## VI.    CONCLUSION

For the reasons above, A/S's Motion (ECF No. 38) is **GRANTED in part** and **DENIED in part**; and eCOs's Motion (ECF No. 37) is **GRANTED in part** and **DENIED in part**. The following claims remain:

- Count I: Fraudulent Inducement (against A/S)
- Count II: Negligent Misrepresentation (against A/S)
- Count III: Breach of Contract (against eCOs)
- Count VII: Declaratory Judgment (against A/S and eCOs)

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

21